**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **Chapter 7** |
| | ) | |
| **CINDY LEE RAYMOND** | ) | **Case No. 10-70693** |
| **BRUCE RICHARD RAYMOND, JR,** | ) | |
| | ) | |
| **Debtors.** | ) | |

---

## MEMORANDUM DECISION

On May 5, 2010, CitiFinancial Auto Corporation ("CitiFinancial") filed a Motion for Approval of a Reaffirmation Agreement seeking this Court's approval of a reaffirmation agreement (the "Agreement") signed by the Debtors, Cindy and Bruce Raymond, on April 23, 2010, regarding a 2003 Jeep Grand Cherokee. The Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form # 27) accompanying the Agreement and submitted by CitiFinancial does not answer the questions "Was debtor represented by counsel during the course of negotiating this reaffirmation agreement" and "If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?" The Debtors were represented by counsel at the time they signed the Agreement but no negotiation as such of its terms occurred as the obligation reaffirmed was the precise pre-petition obligation. In their Statement of Intention filed with their petition the Debtors stated that they intended to reaffirm the CitiFinancial contract.

Although the Statement filed by Debtors' counsel pursuant to Bankruptcy Rule 2016(b) with the petition indicated that she had agreed "to render legal service for all aspects of the bankruptcy case" with no limitation with respect to reaffirmation agreements, such counsel

appeared at the June 1 hearing and stated that she had told the Debtors that she would not

represent them with respect to reaffirmation agreements and that she was not willing to sign the

certification form because of the significant difference between the indicated value ($5,500) of

the vehicle and the amount to be reaffirmed ($8,038).  Both Debtors appeared at the hearing and

Mr. Raymond testified on their joint behalf.  He testified that they understood that the vehicle

was worth less than the debt but that they very much needed the vehicle because of their job

situations and that they both felt that it was in their best interest to reaffirm the debt because they

simply could not afford the risk that the vehicle might be repossessed from them.  He further

testified that they had been and continued to be current in their payments under the contract and

they believed that they would be able to make the remaining payments due.  It was clear to the

Court that he understood the possible consequences to his wife and himself if the Agreement

should be approved by the Court and they should later find themselves unable to continue

making the payments required.  Both the income and expense schedules (I and J) filed with their

petition and the information filed with the Agreement indicated that the Debtors have, just

barely, enough income remaining after their other household living expenses to make the

required payments to CitiFinancial.  At the end of the June 1 hearing the Court requested that

counsel for the Debtors docket a copy of the original contract, which she promptly did.  A

review of that contract by the Court confirms that it does contain a provision making the filing of

a bankruptcy petition by the borrowers an event of default.  There was no appearance at the

hearing on behalf of CitiFinancial.

      The Court finds that Mr. and Mrs. Raymond understand all relevant information

concerning the legal effect and potential consequences of reaffirming this debt.  It further finds

2

that they were in fact represented by counsel at the time of, and in connection with, the signing

of the reaffirmation agreement, but that no actual negotiation occurred between them or their

counsel and CitiFinancial with respect to any modified terms of the reaffirmed contract.  Finally,

while predicting any creditor's reaction to a ruling denying approval of a reaffirmation

agreement is unquestionably somewhat speculative, it further finds that in view of the substantial

"negative" equity in the vehicle, the Debtors' inability to redeem the vehicle or pay for it

otherwise than with monthly amortizing payments, the loan payment history and current status of

such loan, it is unlikely that CitiFinancial will attempt to enforce any "ipso facto" clause making

a bankruptcy filing an event of default as long as payments continue to be made in a timely

manner.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District

Court on July 24, 1984.  The Bankruptcy Code expressly provides in 11 U.S.C. § 524 for

bankruptcy courts to have a role in either approving or disapproving proposed reaffirmation

agreements in certain situations.  Accordingly, the Court concludes that such a matter is a "core"

bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) in that it involves the adjustment,

or at least potential adjustment, of the debtor-creditor relationship and contemplates the debtor's

waiver of the benefit of a discharge with respect to a particular obligation when there is no

assertion that there is any valid basis to deny a discharge or except the particular debt in question

from such discharge.

This Court has previously ruled[1] that 11 U.S.C. § 524(c), (d), and (k)(5) do not provide for the Court to approve a reaffirmation agreement when the debtor has been represented by counsel "during the course of negotiating"[2] a reaffirmation agreement except in the very limited situation that the attorney has certified that in his/her opinion the "debtor is able to make the payment" even though a presumption of undue hardship has been established. In such a situation it is the responsibility of the Court to determine whether the presumption of "undue hardship" has been "rebutted to the satisfaction of the court" pursuant to 11 U.S.C. § 524(m)(1), and then only if the creditor is not a credit union within the provision of 11 U.S.C. § 524(m)(2). The Code does not authorize the Court to relieve counsel for the debtor of counsel's responsibility under such section when the attorney is not willing to certify but the client still wants to reaffirm. *See In re Calabrese*, 353 B.R. 925 (Bankr. M.D. Fla. 2006). If the attorney is not willing to certify in the first place, that is supposed to be the end of the matter and the reaffirmation agreement is not legally effective. The Court recognizes that these provisions create a very definite tension between an attorney's role as counselor to the client and that of advocate to assist the client in accomplishing the latter's lawful objectives. The way § 524 is constructed makes the attorney, in effect, a gate keeper against well intentioned but ill advised reaffirmations of existing obligations, at least in those situations in which the attorney is representing the debtor with respect to such matters. The Court recognizes further that since the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") there seems to be somewhat of a statutory disconnect between §§ 362(h)(1)(B) and

---

[1] *In re Allison*, No. 09-71737 (Bankr. W.D. Va. Dec. 4, 2009).

[2] 11 U.S.C. § 524(c)(6)(A).

4

521(a)(2)(B) of the Bankruptcy Code, which seem to equate the execution and filing with a debtor's schedules of a statement of intent to reaffirm a debt in bankruptcy and the ensuing signing and filing of the reaffirmation agreement with the actual legal effectiveness of such an agreement, and § 524(c) and (m) which impose a duty upon counsel for the debtor to determine that a reaffirmation of a debt secured by personal property will not impose an undue hardship upon the debtor or in certain situations the court itself to decide that a particular reaffirmation agreement is in the debtor's best interest.  There also seems to be a certain statutory disconnect which preceded the enactment of BAPCPA between § 521(a)(2), which seems to contemplate simply the reaffirmation of the original contractual terms of existing debts secured by property, and § 524(c), which seems to envision some possible negotiation of the terms under which such debts will be reaffirmed.  These conflicting pressures can put a debtor's counsel in an almost impossible situation of trying to determine whether his or her obligation to his client to seek the client's lawful desired objective is trumped by his or her duty under the Bankruptcy Code to exercise independent judgment on behalf of the client.  Under the circumstances presented here the Debtors' income does allow for the payment of the monthly amount due CitiFinancial, but their counsel is unwilling to sign the certification provided for in § 524(c) due to a concern about the large discrepancy between the value of a vehicle and the amount secured by a lien against it and perhaps also by the very narrow margin between the clients' income and the expenses paid from it.  Furthermore, unlike some secured creditors in the current very difficult economic environment, CitiFinancial is apparently unwilling to make any concession upon the applicable interest rate going forward or other negotiation of any revised terms of the debt.  In such a situation it is quite understandable that counsel for the Debtors does not believe that she has been

5

involved in any "negotiation" of terms of a reaffirmation agreement.  Nevertheless, the Court

concludes that the Debtors were represented by counsel during their attempted reaffirmation of

the CitiFinancial debt and that it is not authorized to step in when no presumption of undue

hardship exists and substitute its own judgment about whether the Debtors should be permitted

to reaffirm this obligation.  Accordingly, it will decline to approve the Agreement.[3]

The Court points out that neither the failure of this Court to approve the

Agreement with CitiFinancial nor the unwillingness of counsel for the Debtors to certify

precludes Mr. and Mrs. Raymond from continuing to make the payments nor CitiFinancial from

continuing to accept payments on this debt from them.  The Court further observes that Mr. and

Mrs. Raymond appear to have fully complied with both the precise language and the spirit of the

actions required of them in order to obtain a continuation of the automatic stay pursuant to 11

U.S.C. § 362(h)(1) and to retain possession of the Grand Cherokee pursuant to § 521(a)(6).  In

addition it is satisfied that both the Debtors and their counsel have acted in good faith and that

the Raymonds, for the reasons already noted, sincerely have sought the Court's approval of the

Agreement.  The Court does not attempt to rule here on what effect its non-approval of the

reaffirmation agreement has upon CitiFinancial's right, if any, to enforce the bankruptcy "ipso

facto" clause of its contract with the Raymonds.  *See In re Jones*, 591 F.3d 308, 311-12 n. 3 (4th

Cir. 2010).  In the event such creditor should undertake to assert such a right while the Debtors

remain current in their payment of the contractual obligation to such creditor, the Court grants

---

[3] This case does not present the difficult issue of whether the Court will condone a
specific exclusion in the representation agreement and counsel's Rule 2016 disclosure filed with
the petition of any legal services relating to reaffirmation agreements, which in the Court's view
is an important part of the consumer bankruptcy process.

leave to the Debtors to request that their case be reopened without payment of the usual

reopening fee to seek a determination of the rights of the parties with respect to such contention.

An order denying CitiFinancial's Motion will be entered contemporaneously

herewith.

DECIDED this 8th day of June, 2010.

_William F. Stone, Jr._

UNITED STATES BANKRUPTCY JUDGE